IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 2, 2020

**IN RE IMERALD W.**

**Appeal from the Juvenile Court for Shelby County**
**No. DD-7402   Harold W. Horne, Special Judge**

———————————————————

**No. W2019-00490-COA-R3-PT**

———————————————————

This is a termination of parental rights case.  The trial court found, by clear and convincing evidence, that mother's parental rights should be terminated on the grounds of abandonment by the willful failure to support the child, substantial noncompliance with the permanency plans, persistence of conditions, severe child abuse, and failure to manifest an ability and willingness to assume custody or financial responsibility of the child.  The trial court further found, by clear and convincing evidence, that termination was in the best interests of the child.  Having reviewed the record on appeal, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Khadijah L. H.

Herbert H. Slattery, III, Attorney General and Reporter; Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I. BACKGROUND AND PROCEDURAL HISTORY**

The child at issue in this case, I.R.H. ("the Child")[1], was born on May 1, 2013 to Khadijah H. ("Mother") and Jasen W. ("Father")[2].  At the time of the Child's birth,

———————————

[1] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identities.

[2] Father died on October 29, 2018, prior to the filing of the underlying petition.

Mother and Father were unmarried and not living together. The Department of Children's Services ("DCS") became involved with Mother after receiving a report that she had whipped the Child, which resulted in severe bruising on the Child's back. According to the record, when the Child was interviewed by Child Protective Services, the Child indicated that she had been whipped for urinating on herself. On October 17, 2016, DCS filed a petition in the Juvenile Court of Shelby County (the "trial court") to adjudicate the Child dependent and neglected and a victim of severe child abuse. In the petition, DCS alleged that, pursuant to an Immediate Protection Agreement, the Child had been placed in the temporary custody of her paternal grandmother and that Mother had agreed to complete parenting and anger management classes and a mental health assessment. On May 16, 2017, the trial court adjudicated the Child dependent and neglected and a victim of severe child abuse perpetrated by Mother and her paramour, Deonta W.[3] Additionally, the trial court granted Father temporary custody of the Child pending a drug screen. Father, however, failed his drug screen; as a result, the trial court, on July 11, 2017, granted paternal grandmother temporary custody of the Child.

On October 24, 2017, the trial court held a disposition hearing wherein it ordered that, due to Mother's child abuse and Father's failed drug screen, and due to the trial court's additional finding that all available relatives had expressed the need for assistance from DCS in order to care for the Child long term, the Child be placed in DCS custody. The Child has been in DCS' continuous custody since October 2017, residing in the foster home of paternal grandmother. Following the trial court's orders adjudicating the Child as dependent and neglected and removing the Child to DCS custody, multiple permanency plans were developed for Mother.[4] In the plans, Mother was required to: (1) comply with a no-contact order entered against her paramour, Mr. W.; (2) maintain income and stable housing for a period of six months; (3) complete a parenting assessment and a mental health assessment and follow any recommendations; (4) participate in supervised visitation with the Child for four hours per month in a therapeutic setting; (5) present a plan for alternative non-physical discipline techniques; (6) demonstrate parenting skills and alternative discipline techniques; and (7) sign releases for DCS to communicate with service providers.

On January 11, 2019, DCS petitioned the trial court to terminate the parental rights of Mother to the Child, raising five grounds in support of termination: abandonment by the willful failure to support the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(1); substantial noncompliance with the permanency plans pursuant to section

---

[3] Mother was also charged in the Shelby County Criminal Court with felony child abuse of a child under eight years old for the incident. She pled guilty and received a two-year sentence to be served on supervised probation. She was granted judicial diversion, a condition of which required that her visitation with the Child be supervised.

[4] The first permanency plan was dated November 17, 2017. However, because Mother failed to complete any of the requirements contained in the first plan, a second permanency plan was developed on October 17, 2018, which contained largely the same requirements as the first.

36-1-113(g)(2); persistence of conditions pursuant to section 36-1-113(g)(3); severe child abuse pursuant to section 36-1-113(g)(4); and failure to manifest an ability and willingness to assume custody of the Child pursuant to section 36-1-113(g)(14) (the "Petition"). Mother never responded to the Petition and failed to attend the evidentiary hearing, which was held on March 7, 2019. The trial court granted the Petition, based on clear and convincing evidence, terminating Mother's parental rights on all five grounds and finding that the termination was in the best interests of the Child. Mother now appeals.

## II. ISSUES PRESENTED

There are two dispositive issues on appeal, which we restate as follows:

1. Whether there is clear and convincing evidence to support at least one of the five grounds for termination of Mother's parental rights.
2. If so, whether there is clear and convincing evidence to support the trial court's determination that termination of Mother's parental rights is in the Child's best interests.

## III. STANDARD OF REVIEW

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (Tenn. 1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of a parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interests must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt

about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In view of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

As noted earlier, the trial court relied on five statutory grounds in terminating Mother's parental rights: (1) abandonment by the willful failure to support the Child; (2) substantial noncompliance with the permanency plans; (3) persistence of conditions; (4) severe child abuse; and (5) failure to manifest an ability and willingness to assume custody of the Child. Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Moreover, the Tennessee Supreme Court has also instructed this Court to "review a trial court's findings regarding all grounds for termination and whether termination is in a child's best interests, even if a parent fails to challenge these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 511 (Tenn. 2016). Accordingly, we will review each of the foregoing grounds on which the trial court relied in terminating Mother's parental rights.

### A. Abandonment by Willful Failure to Support

Termination of a parent's rights may be initiated based on "[a]bandonment by the parent or guardian, as defined in § 36-1-102[.]" Tenn. Code Ann. § 36-1-113(g)(1). As is relevant here, Tennessee Code Annotated section 36-1-102 provides that "abandonment" means the following:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent . . . ha[s] failed to support or ha[s] failed to make reasonable payments toward the support of the child[.]

- 4 -

Tenn. Code Ann. § 36-1-102(1)(A)(i).  Here, DCS filed the Petition on January 11, 2019.  Accordingly, we must look to the four-month period immediately preceding this date.

The trial court terminated Mother's parental rights under the ground of abandonment by failure to support, finding that Mother "willfully failed to make any contribution whatsoever toward the support of the child, despite being able-bodied and capable of being employed."  On appeal, it is undisputed that Mother made no payments for the support of the Child.  Rather, Mother argues that she did not abandon the Child because "she did not willfully fail to make any contribution toward the support of the Child."  On July 1, 2018, the Tennessee General Assembly amended Tennessee Code Annotated section 36-1-102(1)(A) to remove the element of willfulness from the definition of abandonment by failure to support or visit.  Rather than include willfulness as an element of the ground, Tennessee Code Annotated section 36-1-102(1) now provides that it is an affirmative defense:

> For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful.  The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful.  Such defense must be established by a preponderance of evidence.  The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I), *enacted by* 2018 Tennessee Laws Pub. Ch. 875 (H.B. 1856), *eff.* July 1, 2018.  Specifically, Mother argues that, "[b]ecause there was no proof that Mother is actually working, [Mother] submits there cannot be a finding that she willfully refused to provide support for her child."  We disagree.

Latoya Greer, the DCS case manager of the Child, testified that Mother had reported being employed but failed to pay any support:

> Q: [D]id [Mother] provide any financial support for her child?
> A: No.
> Q: Did she provide any Christmas gifts during that time period?
> A: No.
> Q: To the best of your knowledge, is she able-bodied and capable of being employed?
> A: Yes.
> Q: Is she currently employed to your knowledge?
> A: To my knowledge, she is.
> Q: Okay, where did she say she was employed?
> A: She did not tell me where she's employed.

Q: Did she tell you she was employed during the four months to the filing of this petition?
A: Yes.
Q: Have we asked her to provide proof of employment?
A: Yes.
Q: Has she done so?
A: No.

Because Mother did not appear at trial and presented no evidence, the unrefuted proof—contrary to Mother's argument on appeal—is that Mother was, in fact, working, yet never provided any type of financial support for the Child.[5]  Accordingly, we conclude that the evidence preponderates in favor of the trial court's finding by clear and convincing evidence that Mother abandoned the Child by failing to provide support.

## B. Substantial Noncompliance with Permanency Plans

The trial court also based its termination of Mother's parental rights on her failure to comply with the permanency plans developed by DCS.  Tennessee Code Annotated section 36-1-113(g)(2) provides that grounds for termination may exist when "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan[.]"  Tenn. Code Ann. § 36-1-113(g)(2).  As this Court has previously explained:

> Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and tittle of the permanency plan.  To succeed under Tenn. Code Ann. § 36-1-113(g)(2), the Department must demonstrate first that the requirements of the permanency plan are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place, and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met.  Trivial, minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance.

*In re M.J.B.*, 140 S.W.3d at 656–57 (internal citations omitted).  Additionally, because determining whether substantial noncompliance exists is a question of law, we review the

---

[5] Similarly, Mother failed to file a response to the Petition.  Accordingly, because the record contains no pleading by Mother that raises lack of willfulness as an affirmative defense, and because Mother raised no such defense at trial, we conclude that Mother waived this issue.  *See Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 735 (Tenn. 2013) ("As a general rule, a party waives an affirmative defense if it does not include the defense in an answer or responsive pleading." (citing Tenn. R. Civ. P. 12.08)).

issue de novo with no presumption of correctness. *In re Valentine*, 79 S.W.3d at 548.

Here, the trial court adjudicated the Child dependent and neglected and a victim of severe child abuse because Mother had disciplined the Child by whipping her, which resulted in bruises and injuries to the Child. Accordingly, DCS developed multiple permanency plans for Mother, which required her, among other things, to maintain income and stable housing for a period of six months, to complete a parenting assessment and a mental health assessment and to follow any recommendations, to participate in supervised visitation with the Child for four hours per month in a therapeutic setting, to present a plan for alternative non-physical discipline techniques, and to demonstrate parenting skills and alternative discipline techniques. According to DCS, these requirements were intended to ensure that the Child would return to a safe environment, should she ever be returned to Mother's custody. The record indicates, however, that Mother failed to comply with or complete *any* of the plans' requirements.

Ms. Greer testified that, during the relevant four-month period, Mother provided neither financial support for the Child nor proof of employment, despite having stated to Ms. Greer that she was employed. With regard to the permanency plans' requirement that Mother obtain stable housing, Ms. Greer testified as follows:

> Q: And why did the Court ask her to – why did the permanency plan ask her to get stable housing?
> A: She would not provide an address. She said she stayed in Memphis at one time. Then she said she moved to Jackson. When we asked for the address in Jackson, she would not provide it. So we did not know if she had stable housing.

While Mother eventually provided DCS with a home address, she refused to allow DCS to conduct a home study. Ms. Greer also testified that Mother has not visited the Child since May 2018 and that, despite numerous requests to identify someone to supervise her visitations with the Child, Mother has failed to do so.

Mother now argues on appeal that she "should not be penalized due to her situation involving lack of transportation and the money needed to complete the tasks" considering DCS provided her no help. However, as this Court has held, "this ground for termination does not require that DCS 'expend reasonable efforts to assist a parent in complying with the permanency plan requirements.'" *In re Gabriella H.*, No. M2018-00723-COA-R3-PT, 2019 WL 126996, at \*6 (Tenn. Ct. App. Jan. 8, 2019) (quoting *In re Skylar P.*, No. E2016-02023-COA-R3-PT, 2017 WL 2684608, at \*7 (Tenn. Ct. App. June 21, 2017)). Moreover, even if Mother did suffer hardships that impeded her ability to satisfy the requirements of the permanency plans, such hardships do not excuse her failure to satisfy *any* of those requirements. As DCS noted in its brief on appeal, "[t]asks such as providing DCS with proof of employment, identifying someone who could supervise visitations, and allowing DCS to conduct a home study could easily be

accomplished despite any financial or transportation issues that Mother now alleges." We agree. While Mother is not expected to have complied with every "jot and tittle" of the permanency plans, the record indicates that she failed to comply with or complete any of them, signifying much more than "[t]rivial, minor, or technical deviations" from the permanency plans. *See In re M.J.B.*, 140 S.W.3d at 656-57. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Mother failed to substantially comply with the requirements of the permanency plans.

### C. Persistence of Conditions

The trial court also relied on Tennessee Code Annotated section 36-1-113(g)(3) as a ground for terminating Mother's parental rights, which provides as follows:

> (A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
> (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;
> (B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard[.]

Tenn. Code Ann. § 36-1-113(g)(3). In the instant action, the trial court adjudicated the Child dependent and neglected and a victim of severe child abuse on May 16, 2017, and the Child was removed from Mother's custody and placed in the temporary custody of Father. When Father failed his drug screen, the Child was removed to DCS custody in October 2017, where she was placed in the foster home of her paternal grandmother and where she has remained ever since and has been doing well. The Petition was filed on January 11, 2019 and was heard on March 7, 2019. Accordingly, the six-month statutory requirement is satisfied.

Further, Ms. Greer testified that, even after the Child had been removed from Mother's custody, Mother "refused to acknowledge the abuse that she did to the child."

The permanency plans developed for Mother required her, among other things, to undergo mental health assessments, to present a plan for alternative non-physical discipline techniques, and to demonstrate parenting skills and alternative discipline techniques. As noted above, however, Mother has failed to comply with or complete any of these requirements. Moreover, Mother has refused to allow DCS to conduct a home study. Ms. Greer testified that, when Mother did visit the Child, the Child experienced "traumatic episodes where she started back urinating on herself after the visits" and that she began misbehaving in school.[6] Once Mother stopped visiting the Child, however, the Child's behaviors improved. These facts—especially Mother's refusal to acknowledge the inappropriateness of her discipline techniques—indicate that the conditions that led to the Child's removal still persist, and Mother's failure to comply with or complete any of the requirements in the permanency plans further indicates that there is little likelihood such conditions will be remedied in the near future. Accordingly, we conclude that the evidence preponderates in favor of the trial court's finding by clear and convincing evidence that conditions persisted that prevented the Child's safe return to the care of Mother.

### D. Severe Child Abuse

The trial court also relied on Tennessee Code Annotated section 36-1-113(g)(4) as a ground for terminating Mother's parental rights, which provides that a parent's rights may be terminated if that parent "has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court . . . to have committed severe child abuse against any child[.]" Tenn. Code Ann. § 36-1-113(g)(4). As is relevant here, Tennessee Code Annotated section 37-1-102(b)(27) defines severe child abuse as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]" Tenn. Code Ann. 37-1-102(b)(27)(A)(i). Further, as is relevant here, "serious bodily injury to a child" includes, but is not limited to, "injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects." Tenn. Code Ann. § 39-15-402(c). Here, the trial court found that Mother had committed severe abuse against the Child "in that she pled guilty to criminal charges of felony child abuse for the whippings she gave the child which prompted her removal into foster care." According to the trial court, this guilty plea "is the equivalent of agreeing to severe abuse in that she knowingly caused serious bodily injury to the child by whipping her with an object and caused bruises and injuries to her daughter."

On appeal, Mother now argues that the injuries sustained by the Child "do not

---

[6] Specifically, Ms. Greer testified that "[w]e had to put [the Child] in therapy, trauma therapy, just because of [sic] her behavior had increased once she started seeing her mom."

arise to the level of serious bodily injury or potential death." In making her argument, Mother cites to the definition of "serious bodily injury" contained in Tennessee Code Annotated section 39-11-106(a)(34), which provides that "serious bodily injury" means bodily injury that involves:

(A) A substantial risk of death;
(B) Protracted unconsciousness;
(C) Extreme physical pain;
(D) Protracted or obvious disfigurement;
(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty; or
(F) A broken bone of a child who is twelve (12) years of age or less[.]

Tenn. Code Ann. § 39-11-106(a)(34). This definition of serious bodily injury, however, is inapplicable for purposes of terminating a parent's rights on the ground of severe child abuse. Rather, in its definition of severe child abuse, Tennessee Code Annotated section 37-1-102(b)(27) provides that serious bodily injury "shall have the same meaning given in § 39-15-402(c)[,]" Tenn. Code Ann. § 37-1-102(b)(27)(A)(ii), which, as noted above, provides that the applicable definition of serious bodily injury includes "injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects." Tenn. Code Ann. § 39-15-402(c). Based on Mother's guilty plea to felony child abuse under Tennessee Code Annotated section 39-15-401 and the evidence in the record of the Child's injuries,[7] we conclude that the evidence is clear and convincing in favor of the trial court's finding that Mother committed severe child abuse within the meaning of Tennessee Code Annotated section 36-1-113(g)(4).

### E. Failure to Manifest an Ability and Willingness to Assume Custody

Lastly, the trial court relied on Tennessee Code Annotated section 36-1-113(g)(14) as a ground for terminating Mother's parental rights, which provides that a parent's rights may be terminated if that parent

has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground for termination requires DCS to establish two elements by clear and convincing proof. *In re Maya R.*, No. E2017-01634-

---

[7] The record contains photographs depicting the bruising sustained by the Child as a result of the whippings.

COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018). As to those elements, this Court has stated the following:

> DCS must prove that [the parent] failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." DCS must then prove that placing the children in [the parent's] "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]."

*Id*. at *7-8 (internal citations omitted).

After our review of the record, we find that Mother has failed to manifest an ability and willingness to assume custody and financial responsibility of the Child. Ms. Greer testified that Mother has failed to comply with or complete any of the permanency plans' requirements, which this Court has held constitutes a failure to manifest an ability and willingness to assume custody or financial responsibility of a child. *See id.* at *7 ("Mother failed to manifest a willingness to personally assume legal and physical custody of the children: she completed virtually nothing required by the permanency plan until after the termination petition was filed."). While Mother again argues that such failure should not be held against her due to alleged financial and transportation hardships, such hardships—if any—do not excuse Mother's total failure to comply with or complete any of the requirements in the permanency plans. For example, alleged financial or transportation hardships do not excuse Mother's total and voluntary lack of communication with the Child from May 2018 to October 2018 or her failure to provide DCS with the name of a person who could supervise her visitations with the Child.[8] Furthermore, Mother's claim of financial hardship is incongruous with the testimony offered by Ms. Greer, wherein she stated that Mother had reported being employed yet failed to pay any support. Accordingly, we conclude that the record supports that there is

---

[8] Specifically, Ms. Greer testified as follows:

> Q: And are you aware of why the visits stopped?
> A: Yes . . . . [T]he Circuit Court had ordered the maternal grandfather to supervise the visits. Mom did not like what he was saying on the phone call as to, you know, how her visits were going and she got mad and grandfather called us the next day. He said he was not going to supervise any more visits between mom and the child and when she had nobody else to supervise the visits, she just quit calling.
> Q: And [DCS] is not willing to supervise them because we've been relieved of making reasonable efforts to reunite her; is that correct?
> A: That's correct.
> Q: And have we asked her repeatedly to give us a new name?
> A: Yes.
> Q: And has she done so?
> A: No.

clear and convincing evidence that Mother failed to exhibit an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child.

We also find that placing the Child in Mother's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the Child. Mother, however, argues that "there is no proof directly indicating that the child would be in substantial harm if placed with the Mother." We disagree. Firstly, Mother has refused to allow DCS to conduct a home study. Additionally, Mother has failed to comply with or complete certain requirements of the permanency plans, such as presenting a plan for alternative non-physical discipline techniques and demonstrating parenting skills and alternative discipline techniques. Accordingly, by Mother's own actions—or inaction— DCS is unable to determine whether she can provide a safe and suitable home environment for the Child. Secondly, contrary to Mother's assertions, there is direct proof in the record indicating that a return to Mother's custody would pose a risk to the psychological welfare of the Child. Ms. Greer testified that, when Mother still visited the Child, the Child experienced "traumatic episodes where she started back urinating on herself after the visits" and that she began misbehaving in school.[9] These episodes, however, ceased once Mother stopped visiting with the Child. We hold that the evidence preponderates in favor of the trial court's finding of clear and convincing evidence that Mother failed to manifest an ability and willingness to assume custody or financial responsibility of the Child and that placing the Child in Mother's care would pose a risk of substantial harm to the physical or psychological welfare of the Child.

## V. BEST INTERESTS

Having found at least one statutory ground on which to sustain termination of Mother's parental rights, we must now consider whether DCS has proven by clear and convincing evidence that termination of Mother's parental rights is in the Child's best interests. *See* Tenn. Code Ann. § 36-1-113(c)(2). Once the court has determined that the parent is unfit based on clear and convincing evidence that one or more of the grounds for termination exists, the interests of the parent and child diverge, and the interests of the child become the court's paramount consideration. *In re Audrey S.*, 182 S.W.3d at 877. If the interests of the parent and the child conflict, the court must always resolve the conflict in favor of the rights and best interests of the child. Tenn. Code Ann. § 36-1-101(d). Tennessee Code Annotated section 36-1-113(i) sets forth the following list of factors to be considered when determining a child's best interests in a termination of parental rights case:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's

---

[9] Specifically, Ms. Greer testified that "[w]e had to put [the Child] in therapy, trauma therapy, just because of [sic] her behavior had increased once she started seeing her mom."

best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). Because long-term foster care is disfavored, "many of the statutory best interest factors relate to the likelihood that the child will be able to leave foster care and return to the parent's home in the near future." *In re Adoption of J.A.K.*, No. M2005-02206-COA-R3-PT, 2006 WL 211807, at *4 (Tenn. Ct. App. Jan. 26, 2006). If that likelihood is remote, "the best interest of the child often lies in termination of parental rights so that the child can attain the security and stability of a permanent home through adoption." *Id*. After our review of the record, we conclude that Mother has failed to make any lasting adjustment that would allow for reunification with the Child, and, as such, the best interest factors weigh in favor of terminating Mother's parental rights.

DCS became involved with Mother and Child after receiving a report that Mother had whipped the Child, which resulted in severe bruising on the Child's back. In criminal court proceedings, Mother ultimately pled guilty to child abuse, a Class D felony, under Tennessee Code Annotated section 39-15-401(a). Mother has refused to allow DCS to conduct a home study and has failed to comply with or complete any of the

- 13 -

permanency plans' requirements. Accordingly, Mother has failed to show that she can provide a healthy and safe physical environment for the Child. Mother has failed to provide any financial support for the Child, despite having indicated that she was employed. Mother has failed to exercise regular or even irregular visitation, and, as a result, has no meaningful relationship with the Child. Since October 2017, the Child has resided with her paternal grandmother, with whom she has a strong bond and whom she refers to as "mom." Ms. Greer testified that, since coming into DCS custody, the Child is doing well. Ms. Greer also testified that, were the Child eligible for adoption, paternal grandmother would adopt her immediately. Accordingly, changing caretakers and the Child's physical environment would likely have a negative effect on the Child's psychological well-being. In light of the foregoing, we are satisfied that the record contains clear and convincing evidence that terminating Mother's parental rights is in the Child's best interests.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed.


_____
ARNOLD B. GOLDIN, JUDGE